UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-61185-CIV-COHN/SELTZER

ALAN E. O'DONNELL,

    Plaintiff,

vs.

WACHOVIA BANK, National Association, and
WELLS FARGO & COMPANY,

    Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss Complaint [DE 16] ("Motion to Dismiss"). The Court has carefully reviewed the Motion to Dismiss, Plaintiff's Opposition [DE 18], Wachovia Bank N.A.'s Reply [DE 22], Plaintiff's Sur-Reply [DE 26], and is otherwise advised in the premises.

### I. BACKGROUND

In 2003, Plaintiff opened a checking account (the "Account") with Defendant Wachovia Bank ("Wachovia").[1] Wachovia provided electronic fund transfer privileges to both Plaintiff and his wife. Wachovia also provided debit bank cards to both Plaintiff and his wife.

On March 4, 2007, Plaintiff left the United States and traveled to the Canary Islands, Spain, to join his wife. On or before March 12, 2007, Plaintiff unsuccessfully attempted to use his debit card to withdraw funds from the Account. Plaintiff then

---

[1] The background section is based on the allegations in the Complaint, which the Court assumes are true only for purposes of resolving the Motion to Dismiss.

learned that the Account had a negative balance because someone had debited several thousand dollars from the Account via fraudulent electronic transactions. Consequently, Wachovia rendered Plaintiff's debit cards inoperative.

On March 13, 2007, Plaintiff telephoned Wachovia at its east branch in Asheville, North Carolina to report the unsuccessful withdrawal and the fraudulent transactions. At Wachovia's request, Plaintiff prepared paperwork regarding the incident. Also at Wachovia's request, Plaintiff obtained a police report. Plaintiff faxed both the paperwork and the police report to Wachovia and confirmed with Wachovia that it had received the fax.

Notwithstanding Plaintiff's prompt compliance with Wachovia's requests, Wachovia "allow[ed] fraudulent transactions to accumulate, resulting in additional debits to the Account." Complaint ¶ 12. Furthermore, "Wachovia did not mail or fax to Plaintiff the results of any investigations[,] never disclosed such results to Plaintiff[, and, moreover,] Wachovia did not make a timely credit to [the Account] of any portion of the funds lost." Id. ¶¶ 13-14. Also, "[d]espite numerous communications by Plaintiff to [Wachovia] regarding the failure to credit Plaintiff's Account, Defendant Wachovia failed and refused to make such credit until on or about July 9, 2007." Id. ¶ 15.

Thus, because of Wachovia's "actions and inactions, Plaintiff was marooned with his family in a foreign country without access to any money, for almost four months, and was financially ruined as a result." Id. ¶ 16. Additionally, because of Wachovia's actions and inactions, Plaintiff "was left destitute and unable to return to the United States, and, therefore, unable to obtain access to United States legal courts until after August 7, 2008." Id. ¶ 17.

On August 4, 2009, Plaintiff filed his *pro se* complaint against Defendants Wachovia Bank, National Association and Wells Fargo and Company ("Defendants"). See DE 1 ("Complaint").  The Complaint purports to set forth four counts.  Although Count I commences at paragraph seven and never mentions a specific cause of action, paragraph five of the Complaint states that "[t]his Court has jurisdiction over the matter set forth in Count I below without regard to the amount in controversy, pursuant to 15 U.S.C. § 1693 [the 'Electronic Funds Transfers Act' or 'EFTA']."  The Court, construing *pro se* Plaintiff's pleading liberally, therefore construes Count I as a claim for violation of the EFTA.

Count II of the Complaint "realleges and incorporates by reference paragraphs 1-4 and 6-17 herein, and makes such paragraphs a part hereof."  Complaint ¶ 18.  Count II then states that "[w]hen Plaintiff opened his Account . . . Defendant entered into a written contract with Plaintiff which set forth Defendant's obligations regarding the protection of Plaintiff in the event of loss due to fraud and unauthorized transactions involving the bank card issued by Defendant."  Id. ¶ 19.  The last paragraph in Count II alleges that Wachovia "has failed and neglected to perform the agreement, in that it failed to credit the Plaintiff's account in a timely manner the sums lost due to fraudulent unauthorized transactions, and Plaintiff was damaged as a result."  Id. ¶ 21.  Construing *pro se* Plaintiff's Complaint liberally, the Court construes Count II of the Complaint as a claim for breach of contract.

Count III of the Complaint "realleges and incorporates by reference paragraphs 1-4 and 6-21 herein, and makes such paragraphs a part hereof."  Id. ¶ 22.  Count III further alleges that "[b]eginning with Plaintiff's first notification to [Wachovia] of the

suspended bank card and unauthorized fraudulent transactions, Plaintiff was repeatedly assured that the restoration of his bank card and privileges would occur in a timely manner." Id. ¶ 23.  Plaintiff also alleges that "Plaintiff reasonably relied on Defendant Wachovia['s] representations to his detriment." Id. ¶ 24.  Lastly, in Count III, Plaintiff alleges that "Wachovia's failure to perform the obligations it created by its representations to Plaintiff breached its obligations to Plaintiff who was damaged as described in Paragraph 16." Id. ¶ 25.  The Court, construing *pro se* Plaintiff's Complaint liberally, construes Count III as a claim for promissory estoppel.

In Count IV, Plaintiff alleges that "[t]hroughout February 2007 to March 2007, Defendant Wachovia negligently allowed numerous unauthorized Fraudulent transactions on [the Account] to occur [and that] as a direct result of this negligence, Plaintiff was financially damaged." Id. ¶¶ 27-28.  The Court construes Count IV as a claim for negligence.

Defendants have moved to dismiss Plaintiff's Complaint.  Defendants' Motion to Dismiss raises several arguments: 1) Plaintiff's Complaint violates the one-claim-per-count rule; 2) Plaintiff's EFTA claim is time barred; 3) Plaintiff's EFTA claim fails to allege an electronic funds transfer occurred; 4) the economic loss rule bars Counts II and IV; 5) Plaintiff cannot prove a claim for negligence; 6) North Carolina law does not permit an affirmative cause of action based on promissory estoppel; and 7) Plaintiff has failed to allege that he had any contractual relationship with Defendant Wells Fargo or that Defendant Wells Fargo owed any duty to Plaintiff.  The Court addresses each of Defendants' arguments below.

II. DISCUSSION

**A. Legal Standard**

Rule 8 of the Federal Rules of Civil Procedure specifies that a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If the complaint fails to state a claim upon which relief may be granted, a motion to dismiss may be granted pursuant to Federal Rule of Civil Procedure 12. Fed. R. Civ. P. 12(b)(6). Courts are directed to give pleadings a liberal reading when reviewing a 12(b)(6) motion to dismiss, particularly when the pleader is proceeding *pro se*. GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citations omitted); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976) (*pro se* complaints must be held to less stringent standards than formal pleadings drafted by attorneys) (internal citations omitted).

Though the complaint need not contain detailed factual allegations, the facts alleged in support of the claim(s) "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). In determining the sufficiency of the claim, the Court is required to accept all Plaintiff's well-pleaded facts as true, and all reasonable inferences are to be construed in the light most favorable to Plaintiff. See, e.g., Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1274 n.1 (11th Cir. 1999) (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)). "While the court must accept all well-pleaded allegations in a complaint as true, the court will not accept, without more, conclusory allegations or legal conclusions masquerading as factual conclusions." Robinson v. Jewish Ctr. Towers,

5

Inc., 993 F. Supp. 1475, 1476 (M.D. Fla. 1998) (internal citation omitted).

"While a trial judge is to employ less stringent standards assessing *pro se* pleadings . . . than would be used to judge the final product of lawyers, this leniency does not permit the district court to act as counsel for a party or to rewrite deficient pleadings." Lampkin-Asam v. Volusia County School Bd., Case No. 07-12704 2008 WL 80708, * 2 (11th Cir. Jan. 9, 2008) (citing Hepperle v. Johnston, 544 F.2d 201, 202 (5th Cir. 1976); GJR Invs., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998)).  "In fact, [the Eleventh Circuit has] recently observed that district courts have a supervisory obligation, 'under Rule 12(e), to *sua sponte* direct a plaintiff to better plead his complaint when a shotgun complaint fails to adequately link a cause of action to its factual predicates.'"  Id. (quoting Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1275 (11th Cir. 2006)).

Here, the Complaint incorporates all of the general factual allegations by reference into each subsequent claim for relief.  In other words, Plaintiff has filed a shotgun complaint.  See Ferrell v. Durbin, 311 Fed. App'x 253, 259 (11th Cir. 2009) ("In shotgun style pleading, the complaint incorporates all of the general factual allegations by reference into each subsequent claim for relief.").  The Eleventh Circuit "has had much to say about shotgun pleadings, none of which is favorable."  Davis v. Coca-Cola Bottling Co., 516 F.3d 955, 979 n. 54 (11th Cir. 2008) ("[S]ince 1985 we have explicitly condemned shotgun pleadings upward of fifty times."); Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 n.9 (11th Cir. 2002) ("This court has addressed the topic of shotgun pleadings on numerous occasions in the past, often at great length and always with great dismay."); Byrne v. Nezhat, 261 F.3d 1075, 1131

(11th Cir. 2001) ("Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice."); Anderson v. D. Bd. of Trs. of Central Fla. Cmty. Coll., 77 F.3d 364, 367 (11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.").

The Court, therefore, will require Plaintiff to amend his complaint so that each count does not incorporate by reference all of the allegations in other counts and otherwise complies with the Federal Rules of Civil Procedure.  Nonetheless, the Court addresses each of Defendants' remaining arguments.

### B. Plaintiff's EFTA Claim Is Not Time Barred

Pursuant to 15 U.S.C. § 1693m(g), an EFTA claim "may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."  Here, Plaintiff claims that the alleged unauthorized transactions took place in March 2007 and further that he alerted Wachovia in March 2007 and that it was not until July 9, 2007 that Wachovia credited his account.  See Complaint ¶¶ 9-10, 15.  Plaintiff filed the Complaint in this matter more than one year after the alleged violation and more than one year after Plaintiff's account was credited.  See generally id.  Thus, Defendants contend, the Court should dismiss Count I as time barred.

Plaintiff argues that the statute of limitations for his EFTA claim should be equitably tolled.  Sur-Reply at 3-4.  Equitable tolling alleviates hardship and unfairness that would otherwise deprive a plaintiff of his day in court due to the expiration of a

7

statute of limitations.  See Wallace v. Kato, 549 U.S. 384, 400 (2007) (Breyer, J., dissenting) ("Where a plaintiff because of disability, irremediable lack of information, or other circumstances beyond his control just cannot reasonably be expected to sue in time, courts have applied a doctrine of equitable tolling." (internal quotations omitted)). Equitable tolling does not, however, extend to a plaintiff's lack of due diligence.  Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990).

Here, the Complaint alleges that "[b]ecause of Defendant Wachovia Bank's actions and inactions, Plaintiff was left destitute and unable to return to the United States, and, therefore, unable to obtain access to United States legal courts until after August 7, 2008."  Id. ¶ 17.  Plaintiff has therefore alleged that his failure to file his Complaint was not due to a lack of due diligence.  Rather, the Complaint effectively alleges that circumstances beyond Plaintiff's control prevented him from filing the Complaint before August 7, 2008.  The Court therefore finds that the statute of limitations was equitably tolled until that time.  Consequently, Plaintiff had until August 7, 2009 to file his EFTA claim.  Because Plaintiff filed the Complaint on August 4, 2009, Plaintiff timely filed his EFTA claim.

### C. Plaintiff States an EFTA Claim

To state a claim pursuant to the EFTA, Plaintiff must allege that the transactions at issue are electronic fund transfers as defined by the Act.  15 U.S.C. § 1693a(6).  The Act defines "electronic fund transfer," in relevant part, as follows:

> [A]ny transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers,

>automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone.

15 U.S.C. § 1693a(6).  Defendants contend that "the allegations in Plaintiff's Complaint are insufficient in that he fails to set forth facts to establish the initial element of an [EFTA] claim."  DE 22 at 3 (citing Wachter v. Denver Nat. Bank, 751 F. Supp. 906 (D. Colo. 1990)).  Specifically, Defendants contend that the Complaint fails to include any detail regarding the transactions at issue, the date of the transactions, etc. and therefore fails to state an EFTA claim on which relief can be granted.  The Court disagrees.

The Complaint alleges that "on or before March 12, 2007, Plaintiff attempted to use his debit card for a cash withdrawal and was denied."  Complaint ¶ 9.  According to Plaintiff, "this action marked the date of discovery that there had been several thousands of dollars of unauthorized fraudulent electronic transactions made . . . on the account."  Id.  Additionally, the Complaint alleges that, "on or about March 13, 2007, Plaintiff . . . confirmed with [Wachovia's] employees the existence of the fraudulent electronic fund transactions."  Id. ¶ 10.  The Court finds that these allegations satisfy the notice pleading requirements of the Federal Rules of Civil Procedure.

### D. The Economic Loss Rule

Defendants maintain that "Plaintiff's claims for negligence are barred by [Florida's] economic loss rule because there is a contract that governs the parties and therefore the subject matter of this litigation and the purported damages that Plaintiff

9

seeks to recover."[2]  Motion to Dismiss at 4.  Plaintiff contends that Defendants' reliance on Florida's economic loss rule is misplaced "for the following reason: The situs of Wachovia's negligent actions was in North Carolina, both as to the actions of the Asheville, North Carolina branch and the actions of higher levels at Wachovia, which is a North Carolina corporate resident. . . .  Therefore, Florida's law does not apply."  DE 18 at 8.  The Court, accordingly, must determine what body of substantive law applies to Plaintiff's negligence claim.

### 1. North Carolina Law Applies to Plaintiff's Negligence Claim

This Court "is bound to apply the [choice] of laws rules prevailing in the forum state."  Judge v. American Motors Corp., 908 F.2d 1565, 1577 (11th Cir. 1990) (citing Trans Caribbean Lines, Inc., et al. v. Tracor Marine, Inc., et al., 748 F.2d 568 (11th Cir. 1984)).  Thus, Florida's choice of law rules apply here.  Id.  Florida's seminal decision on choice of law is found in Bishop v. Florida Specialty Paint Co., 389 So. 2d 999 (Fla. 1980), cited in Judge, 908 F.2d at 1577.  In Bishop, the Florida Supreme Court adopted

---

[2]  Florida's economic loss rule provides that unless a party suffers a personal injury or property damage, that party is "generally not entitled to initiate an action in tort to recover an economic loss."  Sarkis v. Pafford Oil Co., Inc., 697 So. 2d 524, 527 (Fla. 1st DCA 1997) (citing Casa Clara Condo. Assoc., Inc. v. Charley Toppino & Sons, Inc., 620 So. 2d 1244 (Fla. 1993)).  "This rule is based on the premise that parties to a contractual relationship have allocated their respective rights and remedies and consequently it is inappropriate to introduce tort remedies."  Id.  There are, however, certain torts which can succeed even where the parties have a contractual relationship.  "Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract."  HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So. 2d 1238, 1239 (Fla. 1996).  Fraudulent inducement is such an example because it is a tort independent of a breach of contract claim in that it "'requires proof of facts separate and distinct from the breach of contract.'"  Indemnity Ins. Co. v. Am. Aviation, Inc., 891 So. 2d 532, 537 (Fla. 2004) (quoting HTP, 685 So. 2d at 1239).

the "significant relationships test," as set forth in the Restatement (Second) of Conflicts of Law sections 145 and 146 (1971).  Judge, 908 F.2d at 1577.  Section 145 of the Restatement provides in part as follows:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6 (emphasis added).[3]
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> (a) the place where the injury occurred,
> (b) the place where the conduct causing injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

Judge, 908 F.2d at 1577 (citing Restatement (Second) of Conflicts of Law § 145 (1971)).  These contacts are to be evaluated according to the relative importance with respect to the particular issue.  Id.

"Most importantly, Florida courts apply the 'most significant relationship' test, not to a collective sum of issues in dispute, but to each individual issue which arises in the case."  Id. at 1578 (quoting Stallworth v. Hospitality Rentals, Inc., 515 So. 2d 413, 415 (Fla. Dist. Ct. App. 1987); Hertz v. Piccolo, 453 So. 2d 12 (Fla. 1984)).  The first step in

---

[3] Section 6 directs the court to consider the following factors:

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

11

the analysis, therefore, is to determine what issue is in dispute.  Here, the parties dispute what law applies to Plaintiff's negligence claim.

When the Court applies the relevant factors to the facts alleged in the Complaint, it becomes obvious that North Carolina's substantive law applies to Plaintiff's negligence claim.  Indeed, the injury arguably occurred at Wachovia's Asheville, North Carolina branch, Wachovia's headquarters located in North Carolina, or both, for Wachovia's "actions and inactions" are alleged to have occurred only there.  Furthermore, Wachovia's place of incorporation and place of business is North Carolina.  Additionally, the place where the relationship of the parties is centered is also arguably North Carolina where Wachovia maintained both the Asheville branch and its headquarters.  Florida, on the other hand, has no apparent connection with the negligence claim alleged in the Complaint.  In fact, the only mention of Florida in the Complaint pertains to Plaintiff's current citizenship and domicile.  North Carolina state law therefore applies to Plaintiff's negligence claim.

2. North Carolina's Economic Loss Rule Bars Plaintiff's Negligence Claim

Consequently, Defendants contend that North Carolina's economic loss rule, like Florida's, bars Plaintiff's negligence claim.  See DE 22 at 3 (citing Kelly v. Georgia-Pacific LLC, 671 F. Supp. 2d 785 (E.D.N.C. 2009)).  North Carolina's economic loss rule is very similar to Florida's rule.  See Kelly, 671 F. Supp. 2d at 791.  North Carolina's rule addresses "the intersection between contract remedies (including warranty remedies) and tort remedies."  Id.  "Thus, '[o]rdinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor.'"  Id. (quoting N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co., 240 S.E. 2d 345, 350 (1978)).  "To

pursue a tort claim and a breach of contract claim concerning the same conduct, 'a plaintiff must allege a duty owed him by the defendant separate and distinct from any duty owed under a contract.'" Id. (quoting Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc., 994 F. Supp. 350, 362 (W.D.N.C. 1997)).

Here, the entirety of Plaintiff's argument that North Carolina's economic loss rule should not bar his negligence claim states as follows:

> Plaintiff's tort claim involves conduct apart and beyond the scope of the written contract pled in Count II.  Although Plaintiff's tort claim does refer to the Defendant's conduct at the time of the breach of contract, Plaintiff's tort claim goes on to cover the Defendant's conduct in the many months following the breach.  The Defendant cannot use its own breach of contract to protect itself from the consequences of its tortious actions.

DE 26 at 5.  Plaintiff, however, has failed to explain to the Court how his negligence claim involves conduct beyond the scope of the parties' contract.  More importantly, the Complaint fails to allege a duty owed him by Wachovia that is separate and distinct from any duty owed under their contract.  North Carolina's economic loss rule bars Plaintiff's negligence claim and the Court will therefore dismiss Count IV.

### E. Plaintiff Fails to State a Claim for Negligence

Defendants argue that even if the Court does not apply the economic loss rule to bar Plaintiff's negligence claim, Plaintiff has failed to plead a prima facie negligence claim.  Because the Court finds that North Carolina's economic loss rule bars Plaintiff's negligence claim, the Court need not address whether the Complaint adequately alleges facts that establish the elements necessary to support a negligence action (i.e., facts that establish duty, breach, proximate cause, and damages).

### F. North Carolina Law Does Not Permit an Affirmative Cause of Action Based on Promissory Estoppel

Defendants argue that North Carolina law prohibits an affirmative cause of action based on promissory estoppel. Rice v. Vitalink Pharmacy Servs., Inc., 124 F. Supp. 2d 343, 347 (W.D.N.C. 2000); see also Home Elec. Co. of Lenoir, Inc. v. Hall & Underdown Heating & Air Conditioning Co., 358 S.E. 2d 539, 544-45 (N.C. Dist. Ct. App. 1987) (dismissing cause of action after refusing to apply doctrine of promissory estoppel in affirmative manner). Plaintiff's Sur-Reply does not address Defendants' argument and the Court's independent research confirms Defendants' position. The Court will therefore dismiss Count III.

### G. The Complaint States a Claim Against Wells Fargo

The Complaint alleges "upon information and belief" that Defendant Wells Fargo "assumed the obligations of Defendant Wachovia." Complaint ¶ 4. On a motion to dismiss, the Court assumes the allegations in the Complaint are true. Thus, the Court assumes that Defendant Wells Fargo has assumed any contractual obligations that Wachovia owed to Plaintiff. The Complaint therefore states a claim against Defendant Wells Fargo.

### III. CONCLUSION

In light of the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss Complaint [DE 16] is **GRANTED IN PART AND DENIED IN PART**.

2. Counts III and IV of Plaintiff's Complaint are **DISMISSED WITHOUT PREJUDICE**.

3.      Because the Complaint constitutes a "shotgun pleading," Plaintiff shall file an Amended Complaint that complies with the Federal Rules of Civil Procedure no later than April 30, 2010.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 7th day of April, 2010.

_____
JAMES I. COHN
United States District Judge

Copies provided to the following:

Counsel of record.

Alan E. O'Donnell, *Pro Se*
208 La Costa Circle
Weston, Florida 33326